# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# WESTERN DIVISION

ROBERT H. KENT,

                Plaintiff,

vs.

COMMISSIONER OF SOCIAL
SECURITY,

                Defendant.

No. 17-CV-4063-LTS

**REPORT AND RECOMMENDATION**

---

Plaintiff Robert H. Kent seeks judicial review of a final decision of the Commissioner of Social Security (the Commissioner) denying his applications for disability insurance benefits (DI) under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and supplemental security income (SSI) benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1383f. Kent argues that the administrative law judge (ALJ), David G. Buell, erred in weighing Kent's subjective complaints, in evaluating and relying on medical opinion evidence, and in formulating a hypothetical question for the vocational expert (VE). I recommend affirming the ALJ's decision.

## I. BACKGROUND [1]

Kent applied for DI benefits in July 2014 and for SSI benefits in August 2014, alleging he became disabled on March 3, 2014. AR 57-58, 187-88, 194-97. Kent alleged he was disabled due to issues with his back, right and left legs, and neck. AR 59, 70. His applications were denied initially in October 2014 and on reconsideration in December 2014. AR 59-79, 83-105. As part of those reviews, state agency consultants

---

[1] For a more thorough overview, see the Joint Statement of Facts (Doc. 15).

from the Iowa Disability Determination Service (DDS) evaluated Kent's physical residual functional capacity (RFC): Matthew Byrnes, DO, on October 21, 2014, and John May, MD, on December 8, 2014. AR 63-66, 74-77, 88-91, 100-03.

Kent requested a hearing before an ALJ, and the hearing was held on November 2, 2016. AR 33-35, 127. Both he and VE (first name unknown) Childress testified at the hearing. AR 33-34, 51. On January 4, 2017, the ALJ issued a written opinion, following the familiar five-step process outlined in the regulations[2] for determining whether Kent was disabled. AR 20-27. The ALJ found that Kent had not engaged in substantial gainful activity since March 3, 2014, that Kent suffers from the severe impairments of degenerative disc disease of the cervical spine and status post lumbar spine surgery, and that these impairments do not meet or equal a listing. AR 22-23. To determine whether Kent could still work despite his impairments, the ALJ determined Kent's RFC as follows:

> [Kent] has the [RFC] to perform light work . . . except [Kent] is only [able] to occasionally stoop, kneel, crouch, and crawl. [Kent] is able to perform work that does not expose [him] to sustained and concentrated cold temperatures, or to hazards, such as working around unprotected heights.

AR 23. Light work requires the ability to lift no more than twenty pounds at a time, the ability to frequently lift or carry objects up to ten pounds, and the ability to walk, stand, or sit most of the time. 20 C.F.R. § 404.1567(b), 20 C.F.R. § 416.967(b). In evaluating Kent's RFC, the ALJ considered Kent's statements and testimony about his symptoms and limitations (finding them inconsistent with the medical and other evidence), treatment

---

[2] "The five-part test is whether the claimant is (1) currently employed and (2) severely impaired; (3) whether the impairment is or approximates a listed impairment; (4) whether the claimant can perform past relevant work; and if not, (5) whether the claimant can perform any other kind of work." *King v. Astrue*, 564 F.3d 978, 979 n.2 (8th Cir. 2009); *see also* 20 C.F.R. § 404.1520(a)(4). The burden of persuasion always lies with the claimant to prove disability, but during the fifth step, the burden of production shifts to the Commissioner to demonstrate "that the claimant retains the RFC to do other kinds of work[] and . . . that other work exists." *Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) (quoting *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004)).

2

records, and opinions from Kent's treating source, Matthew Johnson, MD, and the DDS non-examining physicians (giving each of their opinions some weight). AR 23-25. Based on his determination of Kent's RFC, the ALJ found that Kent could perform his past relevant work as a telephone solicitor, as well as other jobs as a sorter, mail clerk, and office helper. AR 25-27.

The Appeals Council denied Kent's request for review on September 27, 2017 (AR 1-3), making the ALJ's decision that Kent was not disabled the final decision of the Commissioner. *See* 20 C.F.R. §§ 404.981, 416.1481. The Appeals Council admitted additional medical statements from Christopher Jacobs, ARNP (NP Jacobs), (dated January 12, 2017) into the record. AR 5, 185-86. Kent filed a timely complaint in this court (Doc. 4) on October 11, 2017. *See* 20 C.F.R. § 422.210(c). The parties briefed the issues (Docs. 16, 17, 18), and the Honorable Leonard T. Strand, Chief Judge of the United States District Court for the Northern District of Iowa, referred this case to me for a Report and Recommendation.

## II.    DISCUSSION

A court must affirm the ALJ's decision if it "is supported by substantial evidence in the record as a whole." *Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007); *see also* 42 U.S.C. § 405(g). "Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept it as adequate to support a decision." *Kirby*, 500 F.3d at 707. The court "do[es] not reweigh the evidence or review the factual record de novo." *Naber v. Shalala*, 22 F.3d 186, 188 (8th Cir. 1994). If, after reviewing the evidence, "it is possible to draw two inconsistent positions from the evidence and one of those positions represents the [ALJ's] findings, [the court] must affirm the decision." *Robinson v. Sullivan*, 956 F.2d 836, 838 (8th Cir. 1992).

Kent argues that the ALJ erred in three ways: (1) not giving full weight to Kent's subjective complaints; (2) weighing the medical opinions of Dr. Johnson, other providers

3

at Siouxland Community Health Center, and the DDS physicians, resulting in an RFC determination that is not supported by some medical evidence; and (3) providing a defective hypothetical question to the VE. *See* Doc. 16. I will address each of these arguments in turn.

### A.    *Subjective Complaints*

When evaluating the credibility of a claimant's subjective complaints, the ALJ must consider the factors set forth in *Polaski v. Heckler*: "(1) the claimant's daily activities; (2) the duration, frequency, and intensity of the pain; (3) dosage, effectiveness, and side effects of medication; (4) precipitating and aggravating factors; and (5) functional restrictions." *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998); *accord Polaski*, 739 F.2d 1320, 1321-22 (8th Cir. 1984), *vacated*, 476 U.S. 1167 (1986), *reinstated*, 804 F.2d 456 (8th Cir. 1986).[3] "Other relevant factors include the claimant's relevant work history and the absence of objective medical evidence to support the complaints." *Black*, 143 F.3d at 386. The ALJ may reject a claimant's subjective complaints based on "objective medical evidence to the contrary," *Ramirez v. Barnhart*, 292 F.3d 576, 581 (8th Cir. 2002); or "inconsistencies in the record as a whole," *Brockman v. Sullivan*, 987 F.2d 1344, 1346 (8th Cir. 1993). This court must "defer to the ALJ's determinations regarding" a claimant's subjective complaints, "so long as they are supported by good reasons and substantial evidence." *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005).

Kent did not submit a function report, but he completed a pain questionnaire, responded to interrogatories, and testified at the administrative hearing. AR 38-51, 234-36, 286-93. The ALJ summarized Kent's allegations about his pain and its limiting

---

[3] The court did not explicitly say that it was reinstating the original *Polaski* opinion, but the Eighth Circuit has recognized that it "effectively reinstat[ed]" *Polaski*. *Jones v. Callahan*, 122 F.3d 1148, 1151 n.3 (8th Cir. 1997).

effects. AR 23-24. Kent reported that he has constant back pain and that he has sharp neck pain that comes and goes and worsens if he sits or stands for too long. AR 287. He later testified that he experiences pain in his back and neck, that he has to lie down most of the day, and that he can only sit, stand, and walk for short periods (ranging from five to twenty minutes at a time). AR 45, 49; *see also* AR 47, 234, 287 (pain reportedly increased with movement and radiated to other areas); AR 43-44, 49, 236, 287, 291 (pain limits his ability to sit or stand for very long, and he has to constantly move and change positions); AR 289 (can only walk one-quarter of a block before needing to rest or sit down, can stand about ten to twenty minutes before needing to sit, and can sit for fifteen to twenty minutes before needing to stand); AR 50, 289-90 (in an eight-hour day, he can walk in short spurts for thirty minutes, can sit for two to three hours total, can stand for forty minutes total, and spends around four hours or most of the day lying down). Kent also testified that his left arm goes numb and will just hang at his side, that his right arm had recently started to go dead, that he cannot type due to his arm issues, and that his arms and neck "just go[] crazy." AR 44, 47, 50. Kent argues the ALJ erred in evaluating his subjective complaints because the ALJ failed to adequately explain the inconsistencies in Kent's complaints. Doc. 15. "The ALJ [i]s not required to discuss methodically each *Polaski* consideration, so long as he acknowledge[s] and examine[s] those considerations before discounting [the claimant's] subjective complaints." *Lowe v. Apfel*, 226 F.3d 969, 972 (8th Cir. 2000).

The ALJ in this case discounted Kent's subjective complaints based on inconsistencies with the medical evidence, the nature of Kent's treatment, some of Kent's activities of daily living, and inconsistencies in Kent's own statements. Overall, each of these were good reasons to not fully credit Kent's allegations about his pain and its limiting effects on his ability to function. First, as noted by the ALJ, although treatment records confirm degenerative changes in Kent's spine, those records show his neck pain resolved prior to his surgery in June 2014 and that surgery improved his condition. AR

24.  Kent stated his daily sharp neck pain makes it hard for him to sit or stand for very long, and causes his neck to "lock up."  AR 44, 47, 287.  The records show that although Kent complained of neck pain that radiated down his left arm in May 2013 (AR 304, 306-07), he reported in January 2014 that his neck pain had subsided (AR 362) and reported no neck pain in March, April, or May of that year (AR 364-65, 367).  Similarly, he reported some neck pain with cold weather in December 2015, but primarily complained of back pain.  AR 416-17.  He made no other complaints about his neck during subsequent visits, including his most recent visit in October 2016.  AR 445-47.

Regarding back pain, Kent testified his back surgery was not successful, and that he has constant, sharp, and aching pain every day in his lower back, left arm, and right leg.  AR 44, 47, 234, 287.  Although treatment records show he reported ongoing pain after surgery (AR 375, 377, 403, 416, 428-29, 452-53), the records support the ALJ's finding that Kent's condition improved after surgery.  *See* AR 416 (reported back and neck bothered him more in cold months but not complaining of constant, daily pain), AR 446, 448 (rated health as "fair" and reported aching pain on right side of body over four-to-seven days stemming from fall rather than daily back pain), AR 453 (medication helping some with pain); *compare* AR 389 (noted pain with bowel movements in magnetic resonance imaging (MRI) questionnaire prior to surgery), *with* AR 400 (no pain noted with bowel movements after back surgery in MRI questionnaire).  In addition, the records also show improvement in Kent's pain level following surgery.  *Compare* AR 304, 345, 348, 351, 355, (pain rated 7/10, 6/10, 3 to 8/10, 3 to 8/10, and 10/10 respectively prior to surgery), *with* AR 416, 452 (pain rated 4/10 and 5/10 after surgery in December 2015 and September 2016); *but see* AR 428 (pain rated 8/10 post-surgery in September 2015).  MRI results show significant improvement in Kent's condition.  AR 309, 385-86, 393-94.  Of particular note, Dr. Johnson noted the post-surgery MRI results in September 2014 showed "substantial decompression of the lumbar spinal canal" with improvement to a herniated disc, and "[n]o obvious residual or recurrent spinal canal or neuroforaminal

6

stenosis and no recurrent or residual disk herniation." AR 404. Dr. Johnson opined that Kent's reported "pain is out of proportion to what I would expect given his operative course and MRI findings." *Id*. An ALJ may consider a claimant's improvement with treatment in determining the weight to give to the claimant's subjective complaints. *Rahe v. Astrue*, 840 F. Supp. 2d 1119, 1136-37 (N.D. Iowa 2011) (collecting cases).

The ALJ correctly noted that examinations showed Kent walks with a normal gait (AR 24), but most of these examination results were from prior to Kent's surgery. *See* AR 307, 351, 355, 363, 365, 368, 421 (ALJ cited AR 466, which is a duplicate of AR 421). A majority of the records following surgery did not indicate Kent's gait (some did not include a full physical examination). AR 404, 431, 448, 451-59. The only post-operation record listing Kent's gait showed he walked with a cane, but his gait was normal. AR 21. The records similarly show that Kent had full muscle strength, as noted by the ALJ (AR 24), but this finding was fairly consistent both before and after surgery. *See* AR 306-07, 351, 355, 363-65, (5/5 strength prior to surgery); 372, 375, 377, 404, 421 (full or 5/5 strength after surgery). Examinations prior to surgery regularly showed reduced range of motion and pain with palpation. AR 307 (decreased range of motion in left arm), 351 (discomfort with flexion, extension and rotation, tenderness with palpation), 355 (severely limited flexion, extension and rotation), 363 (pain with extension and flexion), 365 (limited extension and flexion), 368 (limited flexion, extension and rotation). Objective testing following surgery showed improved range of motion, negative straight-leg testing, and decreased pain during palpation. *See* AR 307, 351, 355 (pain noted during palpation prior to surgery); 375 (only tender at incision site six weeks after surgery); 377 (full strength and negative straight-leg test); 421 (full range of motion and normal strength in neck and back, although both were somewhat tender); *but see* AR 404 (tenderness noted during palpation of lumbosacral region, although lack of flexion and extension based only on Kent's report of pain and Dr. Johnson found Kent's pain inconsistent with treatment and MRI results). Three of his four most recent

7

visits involved either no or only a partial physical examination. AR 427-34, 445-59. Although some of the objective findings from Kent's examinations were inconclusive, these results generally support the ALJ's finding. *See Julin v. Colvin*, 826 F.3d 1082, 1086 (8th Cir. 2016) (although objective medical evidence was equivocal, evidence supported ALJ not fully crediting claimant's subjective complaints).

In addition, the treatment records do not support Kent's allegations that he needs to lie down most of the day and cannot sit, stand, or walk for any significant period of time. Kent did not report these limitations to treatment providers after he had surgery, as noted by the ALJ (AR 24). The only somewhat relevant references were in August 2014, when he reported that his back was stiff in the morning but improved as the day went on and that he could not stand for very long, and in October 2014, when he indicated his pain did not improve or worsen with any particular position and made no mention of needing to lie down or change positions to help with the pain. AR 375, 403. As noted above, objective tests do not generally support Kent's reported functional limitations. *See Zeiler v. Barnhart*, 384 F.3d 932, 936 (8th Cir. 2004) (records did not support claimant's alleged limitations where claimant did not report her alleged issues of concentration to treatment providers and the medical evidence did not support claimant's need to lie down). Likewise, treatment providers never imposed these types of restrictions.

The ALJ also pointed to Kent's reported need to use a cane as being inconsistent with the medical evidence. AR 24. Kent reported that he was prescribed a cane to help him walk and that he uses it all the time because he has fallen so many times and his left leg "just does what it wants to." AR 44, 259, 289. Although NP Jacobs wrote a short letter in January 2017 that Kent "chronically walks with a limp and requires a cane for ambulation" (AR 186), only two treatment records reflect Kent using a cane (AR 421, 446). Therefore, I cannot say the ALJ was incorrect in noting this inconsistency, which supports the ALJ's conclusion about Kent's subjective complaints.

The ALJ next relied on inconsistencies in Kent's statements regarding his pain and functional limitations. Kent twice reported falls to his treatment providers—in September and October 2016. AR 446, 453. He later testified that the first fall (when he fell over a garbage can and blacked out) was a result of him "spasm[ing] out" or possibly him having a seizure. AR 44. In reporting this incident to NP Jacobs ("a few months" after it happened), Kent said he passed out while he was cooking and cleaning in the hot kitchen and after he had not been eating well. AR 453. Kent indicated he was able to get up and finish cleaning after he came to and denied any seizures. *Id*. The October 2016 fall occurred while Kent was carrying groceries, and he fell down two steps. AR 446. He was prescribed a new cane during that visit (the other one broke during the fall), but he did not report any other falls, and he made no complaints of neck or back pain (other than pain that resulted from his fall). AR 446-49. Inconsistencies in a claimant's statements can support an ALJ's decision to discount a claimant's subjective complaints. *See Choate v. Barnhart*, 457 F.3d 865, 871-72 (8th Cir. 2006); *see, e.g., Pirtle v. Astrue*, 479 F.3d 931, 935 (8th Cir. 2007) (holding that ALJ gave good reasons for discounting claimant's credibility when the claimant "made inconsistent reports of her activities of daily living").

The treatment records show additional inconsistencies in Kent's statements. Kent testified at the administrative hearing that his medication had caused him to hallucinate. AR 45. He never reported this issue during his benefits application process (AR 235, 255-59, 288), however, nor did he report having hallucinations[4] to his treatment providers (AR 403-04, 417, 429 (reported nausea and vomiting), 446-47, 453, 462). Kent reported in December 2014 that he was agitated all the time because of his pain. AR 260. Treatment records, however, show that Kent was not agitated or anxious during

---

[4] Kent testified at the administrative hearing that even though his medication does not work for very long and caused hallucinations, he did not agree when treatment providers wanted to reduce the dosage. AR 45.

examinations.  AR 416-17, 421, 428, 431, 448.  Kent also reported in December 2014 that he needs help taking care of his personal hygiene, and he testified in November 2016 that he is unable to feed himself, that he drops dishes and can lift only items such as bread, and that he fears being homeless because someone has to help take care of him.  AR 46, 50, 260.  In September 2015, however, he indicated he was able to shower, brush his teeth, shave, comb his hair, and perform other personal hygiene tasks on his own.  AR 291.  Similarly, the ALJ remarked that Kent's abilities to carry groceries and to cook and clean his kitchen "suggest that he may not be as limited as he has alleged."  AR 24.  The record supports a finding that Kent's ability to engage in daily activities (AR 46, 236, 290-91, 453) calls into question his complaints of pain and limitations.  *See Milam v. Colvin*, 794 F.3d 978, 985 (8th Cir. 2015) (ability to cook, do laundry, take care of personal hygiene, and shop for groceries, "particularly when considered in conjunction with the medical records"—which showed a conservative treatment history, normal objective test results, and a failure to seek treatment for long periods—supported the ALJ's decision to not fully credit claimant's subjective complaints); *Medhaug v. Astrue*, 578 F.3d 805, 817 (8th Cir. 2009) ("[A]cts such as cooking, . . ., doing laundry, [and] shopping . . . are inconsistent with subjective complaints of disabling pain.").

The ALJ found that Kent's statement that he can no longer work as a telephone solicitor, work he performed from 2007 to 2010 and from 2011 to 2012, was inconsistent with his return to work as a power washer, which occurred in 2013 and 2014.  AR 24-25, 43-44, 78, 214, 304 (working as power washer in May 2013), 345 ("patient work[ing]" in May 2014).  Kent testified he had problems working as a telephone solicitor because he had to lie down on the floor or stand up and move around because his back locked up, and he could no longer sit long enough to perform this type of work.  AR 42-43, 50.  He also testified he could not perform that type of work because his arm goes dead.  AR 50.  Kent argues the ALJ misstated the record by finding that Kent returned to more strenuous work as a power washer because he did so for only a short period of

time prior to his surgery. Doc. 16. The ALJ considered this factor in assessing Kent's subjective complaints, and not as a determinative factor of Kent's RFC (it is undisputed that Kent has not returned to work since his surgery). I find Kent's testimony about being unable to work as a telephone solicitor is inconsistent with the fact that he later performed part-time work as a power washer. Regardless, the ALJ provided other good reasons that are supported by the record for his assessment of Kent's subjective complaints.

The ALJ relied on the conservative nature of Kent's treatment since his June 2014 surgery as a reason for not fully crediting his reports of pain. AR 24. Indeed, following Kent's surgery, treatment providers recommended only physical therapy and medication management to treat his reported pain. AR 372, 375, 378, 404, 422, 431-32, 449 (also prescribed cane after fall), 454-56. At the administrative hearing, Kent testified that he was only being treated with pain medication and that providers wanted to reduce that medication. AR 45. In addition, Kent sought less treatment for his neck and back pain following surgery. Prior to surgery, Kent had nine medical visits between January and June 2014, all related to pain. *See* AR 362-63 (January 21 visit with referral to physical therapy because Kent "ha[d] not had any conservative measures done in terms of his back"); AR 364 (March 19 recheck with MRI ordered); AR 365-66 (April 15 visit, recommended lumbar epidural flood); AR 355-56 (May 1, lumbar epidural steroid injection performed); AR 351-52 (May 19 left lumbar facet injection); AR 348-49 (May 23 right lumbar facet injection and prescription for transcutaneous electrical nerve stimulation (TENS) unit); AR 367-68 (May 27 recommendation of surgery based on change in symptoms); AR 345-46 (May 28 physical therapy visit for TENS unit only). After surgery, Kent saw Dr. Johnson on an almost monthly basis from July to October 2014, and he attended physical therapy and a pain clinic during that time period. AR 372, 375-78, 403-04, 410, 427. Thereafter, he did not seek medical care again for nearly a year, until September 2015. AR 427. Treatment records show only two visits per year in 2015 and 2016, and only one of those visits was a follow-up for Kent's pain. AR 415-

26,[5] 470 (December 2015 Heath Risk Assessment physical); 427-34 (September 2015 follow-up for hypertension); AR 445-50 (October 2016 visit for hypertension follow-up); 451- 59 (September 2016 follow-up for neck and back pain). The conservative nature of a claimant's treatment (such as physical therapy, medication, exercises, and heat and sound treatments) may be an appropriate factor, among others, for an ALJ to consider in weighing the claimant's subjective complaints. *Milam*, 794 F.3d at 985 ("relatively conservative treatment history," such as exercises and medication, supported ALJ's decision to not fully credit claimant's subjective complaints); *see also Gowell v. Apfel*, 242 F.3d 793, 797 (8th Cir. 2001) ("examples of [claimant's] physicians reducing or ending [claimant's] medication and prescribing conservative treatment" with findings of full range of motion, small reduction in strength, and normal reflexes supported ALJ's decision to not fully credit claimant's complaints); *Robinson v. Sullivan*, 956 F.2d 836, 840 (8th Cir. 1992) (finding conservative treatment that "somewhat" relieved pain with minimal symptoms contradicted claims of disabling pain). Similarly, a claimant's failure to "seek medical treatment for [claimant's] alleged pain for long periods of time" can support an ALJ's decision to not give full weight to a claimant's subjective complaints. *Milam*, 794 F.3d at 985.

In addition to the conservative nature of Kent's treatment,[6] the ALJ also noted that Kent stopped treatment with the pain clinic "without explanation" as a basis for questioning Kent's subjective complaints. AR 24. The record demonstrates that Kent stopped treatment with the pain clinic without explanation, and declined referral to an orthopedic surgeon because he did not want any more surgeries. AR 429, 453. Although

---

[5] Duplicate records located at AR 460-68.

[6] Kent was referred to physical therapy on multiple occasions, although he reported this treatment was painful and did not provide much relief. AR 288, 363-64, 375, 377. Kent reported some relief from medications, such as oxycodone and hydrocodone/acetaminophen, but these medications upset his stomach and made him tired, "cloudy," and light-headed. AR 235, 255-59, 288. Kent reported taking other medications, taking hot baths, and using a TENS unit did not help his pain. AR 235.

12

a failure to seek or follow through with treatment may support a finding that the claimant's symptoms are not as severe as claimed, the ALJ must consider possible reasons the claimant failed to seek or follow through with treatment before discrediting a claimant on that basis. Social Security Ruling (SSR) 16-3P, 81 Fed. Reg. 14166, 14170 (Mar. 16, 2016) (superseding SSR 96-7P); *see also Watkins v. Astrue*, 414 F. App'x 894, 898 (8th Cir. 2011) (per curiam) (Colloton, J., concurring); *Johnson v. Bowen*, 866 F.2d 274, 275 (8th Cir. 1989) ("It is for the ALJ in the first instance to determine [claimant's] motivation for failing to follow prescribed treatment or seek medical attention."). The ALJ in this case did not question Kent about why he stopped treatment at the pain clinic or declined other treatment options, and the ALJ did not address whether Kent's failure to do so was excused.[7] Regardless, any error was harmless. Other reasons support the ALJ's credibility determination and the ALJ would not have assessed Kent's subjective complaints differently if the ALJ had considered Kent's discontinuation of treatment at the pain clinic. *See, e.g.*, *King v. Colvin*, No. 13-CV-3039-LTS, 2014 WL 1344194, at *14 (N.D. Iowa Apr. 4, 2014); *cf. Watkins*, 414 F. App'x at 896-97 (majority opinion) (remand required when ALJ "relied *primarily* on [claimant's] noncompliance with treatment recommendations to discredit his allegedly disabling [mental health] symptoms" and did not address whether such failure was justified (emphasis added)).

The ALJ in this case gave good reasons for not giving full weight to Kent's subjective complaints.

---

[7] A treatment record indicating Kent was no longer being treated at the pain clinic included a notation that he reported medications caused nausea and vomiting, and he "[d]idn't think they helped much anyways." AR 429. As noted before, Kent previously reported oxycodone and hydrocodone/acetaminophen upset his stomach and made him tired, "cloudy," and light-headed. AR 235, 255-58, 288. He testified at the administrative hearing that his medication made him "loopy" and affected his concentration and that his pain medication had caused him to hallucinate (although the ALJ did not credit this report and it does not appear to be supported by the record). AR 42, 45. The ALJ also did not ask about Kent declining an orthopedic surgeon referral and did not comment on Kent's statement he did not want to have any more surgeries. AR 453.

13

### B. *Medical Opinions and Some Medical Evidence*

When determining a claimant's RFC, an ALJ considers medical opinions "together with the rest of the relevant evidence." 20 C.F.R. §§ 404.1527(b), 416.927(b).[8] The ALJ must give controlling weight to a treating-source opinion if the opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in [the] case record." *Id.* §§ 404.1527(c)(2), 416.927(c)(2). "Whether the ALJ gives the opinion of a treating [source] great or little weight, the ALJ must give good reasons for doing so." *Reece v. Colvin*, 834 F.3d 904, 909 (8th Cir. 2016). The ALJ considers the following factors to determine the weight to assign the opinion:

> (1) whether the source has examined the claimant; (2) the length, nature, and extent of the treatment relationship and the frequency of examination; (3) the extent to which the relevant evidence, "particularly medical signs and laboratory findings," supports the opinion; (4) the extent to which the opinion is consistent with the record as a whole; (5) whether the opinion is related to the source's area of specialty; and (6) other factors "which tend to support or contradict the opinion."

*Owen v. Astrue*, 551 F.3d 792, 800 (8th Cir. 2008) (quoting the current 20 C.F.R. §§ 404.1527(c), 416.927(c)). As a general rule, the ALJ's RFC determination must be supported by at least some medical evidence that "addresses the claimant's ability to function in the workplace." *Hutsell v. Massanari*, 259 F.3d 707, 712 (8th Cir. 2001)

---

[8] The Social Security Administration adopted new regulations for evaluating medical opinions that went into effect on March 27, 2017. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844 (Jan. 18, 2017). Rather than stating that these rules are not retroactive (its usual practice), the Social Security Administration issued two sets of new regulations, one governing claims filed on or after March 27, 2017, and one governing claims filed before that date, which are substantively the same as the old rules. *See, e.g.*, 20 C.F.R. §§ 404.1527, 404.1520c. The Eighth Circuit has cited to both the old rules, *see Gates v. Comm'r, Soc. Sec. Admin.*, 721 F. App'x 575, 576 n.2 (8th Cir. 2018) (per curiam), and the new rules, *see Chesser v. Berryhill*, 858 F.3d 1161, 1164 (8th Cir. 2017). As it makes no substantive difference, for ease, rather than citing to both sets of rules, I cite only to the new regulations contained in the 2018 Code of Federal Regulations.

(quoting *Lauer v. Apfel,* 245 F.3d 700, 704 (8th Cir. 2001)). "[A]n ALJ is . . . 'required to consider at least some supporting evidence from a [medical] professional'" to determine a claimant's RFC. *Id.* (second alteration in original) (quoting *Lauer*, 245 F.3d at 704).

The ALJ in this case gave only some weight to Dr. Johnson's opinion that Kent could lift only ten to fifteen pounds and could not engage in repetitive twisting or bending (AR 319) because Dr. Johnson imposed those restrictions immediately following Kent's surgery, and because these limitations were inconsistent with more recent treatment records and examinations. AR 25. According to Kent, the ALJ erred in weighing Dr. Johnson's opinion because it was substantiated by MRI results. Doc. 16. Kent also argues the ALJ did not indicate what weight he gave to subsequent treatment providers at Siouxland Community Health, and treatment records from those providers show that Kent had a continued diagnosis of degenerative disc disease, that MRI testing supported this diagnosis, and that he had chronic back pain following surgery. *Id.* Kent contends that the ALJ substituted his own opinion for those of medical professionals and that the opinions of the non-examining DDS physicians do not support the ALJ's findings. *Id.*

Dr. Johnson imposed the functional limitations listed above on June 27, 2014—the day after Kent's back surgery—when he was discharged from the hospital early at his own request and because he was walking without assistance, met all criteria for discharge, and was doing well. AR 319. The only other limitations reflected in treatment records came approximately one month later, on July 9, 2014, when Scott Feese, PA, directed Kent to lift no more than fifteen pounds and to avoid repetitive bending, twisting, or lifting. AR 372. There is no indication any treatment provider continued to impose these or any other functional limitations, and these restrictions are inconsistent with more recent treatment records. *See* AR 375, 377-78, 404, 421-22, 425, 431-32, 448-49, 455-56. Indeed, Dr. Johnson later opined, based on the updated MRI showing improvement from surgery, that Kent's reported pain was inconsistent with the medical evidence. AR 403-

404. In addition, in both 2015 and 2016 (after Kent's surgery), treatment providers encouraged Kent to engage in physical activity to address concerns with his weight. AR 419, 422, 432, 448, 456. Functional limitations that are temporary, "reflecting [the claimant's] condition in the immediate aftermath of [the claimant's] back surgery," and that fail to take into consideration the claimant's later improvement can support an ALJ's decision to not give substantial weight to a treating provider's opinion. *See Stanley v. Colvin*, No. 3:13-05076-DGK-SSA, 2014 WL 3900624, at *4 (W.D. Mo. Aug. 11, 2014).

In support of his arguments, Kent relies on *Singh v. Apfel*, 222 F.3d 448 (8th Cir. 2000), and other cases that outline the standard for giving substantial weight to a treating physician's opinion. Unlike in *Singh*, Kent did not consistently seek medical treatment for his pain, his reported pain cannot be attributed to objective medical findings, and clinical data did not support greater limitations than those included in the ALJ's RFC determination. *See Singh*, 222 F.3d at 452 (finding record was "replete with evidence" substantiating the treating physician's opinion where claimant consistently sought treatment and underwent various procedure, claimant's "pain can be directly attributed" to diagnosis, and diagnosis and doctor's opinion were "amply supported by clinical data."). The ALJ's finding in this case, that Dr. Johnson's post-surgery limitations are inconsistent with the overall medical evidence, is supported by the record as discussed in the previous section. *See* AR 403-04 (Dr. Johnson found medical evidence did not support Kent's reported pain and discontinued his care without mentioning functional limitations). A finding that an opinion is inconsistent with other evidence in the record is a "good reason" for discounting the opinion of a treating physician. *See Stormo v. Barnhart*, 377 F.3d 801, 805-06 (8th Cir. 2004) (opinions from treating sources may be "given less weight if they are inconsistent with the record as a whole"); *see also Gates v. Berryhill*, 721 F. App'x 575, 576 (8th Cir. 2018) (treating physician's letter opinion not entitled to controlling weight because it was inconsistent with physician's treatment

16

notes). I also note that although the ALJ gave only some weight to Dr. Johnson's post-operative limitations, the ultimate RFC determination restricted Kent to only occasionally lifting twenty pounds and is consistent with subsequent treatment records from Dr. Johnson and Kent's other treatment providers.

Next, the ALJ gave some weight to the non-examining DDS physicians' opinions that Kent could engage in work at a light exertional level. AR 25. These opinions, by Dr. Byrnes (AR 63-66, 74-77) and Dr. May (AR 88-91, 100-03), both support the ALJ's RFC determination that Kent could perform light work with only occasional stooping, kneeling, crouching, and crawling, and with no exposure to sustained and concentrated cold temperatures or working around unprotected heights (AR 23). Kent asserts that these opinions do not constitute substantial evidence to support the ALJ's determination and should have been given little weight. Doc. 16. Kent relies on *Harvey v. Barnhart*, 368 F.3d 1013 (8th Cir. 2004), in making this argument. The court in *Harvey* confirmed that opinions from non-examining, consultative physicians, standing alone, do not constitute substantial evidence to support an ALJ's RFC determination. 368 F.3d at 1016. The court found, however, that these types of opinions, when combined with other portions of the record, may provide substantial support for an ALJ's RFC determination. *Id.* at 1015-16 (ALJ's RFC finding substantially supported by (1) opinion from consultative psychiatrist, which supported ALJ's conclusion that claimant's subjective complaints not fully credible; (2) medical records showing that symptoms were controlled or controllable, that there was no support for the severity of claimant's reported limitations, and that claimant possibly engaged in drug-seeking behavior; and (3) claimant's inconsistent testimony). Similarly, although an ALJ's RFC determination is generally not supported by substantial evidence when the ALJ relied solely on the opinions of non-examining, consultative physicians, *see Nevland v. Apfel*, 204 F.3d 853, 857-58 (8th Cir. 2000), remand is not required when "other medical evidence in the record"—such as treatment notes—"clearly establishes a claimant's RFC to do other

17

work[] and to function in the workplace." *Kruger v. Colvin*, No. C13-3036-MWB, 2014 WL 1584411, at *10 (N.D. Iowa Apr. 21, 2014), *report and recommendation adopted by* 2014 WL 2884038 (N.D. Iowa June 25, 2014); *see also Becherer v. Colvin*, No. 4:12CV2356 ACL, 2014 WL 4230906, at *13 (E.D. Mo. Aug. 26, 2014) (holding that remand is not required when "no medical evidence in the record support[s] any greater limitations than those found by the ALJ"); *Symens v. Colvin*, No. CIV 13-3006-RAL, 2014 WL 843260, at *26 (D.S.D. Mar. 4, 2014) (holding that remand is not required under *Nevland* when "the ALJ engaged in an extensive review of the medical evidence. . . . [that] supported the ALJ's" RFC and "was also consistent with the reports from the" nonexamining state agency consultants). In this case, Dr. Johnson did not provide a full opinion about Kent's functional abilities and limitations; rather, his opinion regarding lifting and movement restrictions were temporary. No other treating or examining source provided an assessment of Kent's functional abilities or limitations. Nevertheless, the overall record provides some medical evidence to support the ALJ's RFC determination. *Smith v. Colvin*, No. C14-4076-LTS, 2016 WL 1248874, at *11 (N.D. Iowa Mar. 29, 2016) (RFC determination supported by some medical evidence, even without treating or examining source opinion, where claimant's "physical impairments were not complex," claimant "sought little treatment [following surgery] and reported no significant problems to any provider," claimant had normal range of motion, strength and extension, and reviewing DDS consultants' opinions were consistent with RFC determination).

In this case, the ALJ properly weighed the medical opinions from Dr. Johnson and from the non-examining DDS physicians. In determining Kent's RFC, the ALJ considered those opinions, as well as the treatment records as a whole and Kent's subjective complaints. AR 24-25. As discussed in the prior section, treatment records show that Kent decreasingly sought treatment following surgery, surgery helped improve his condition, and examinations were consistent with the ALJ's RFC determination. In addition, the non-examining DDS physicians opined that Kent can function at a light

18

exertional level.  AR 63-66, 74-77, 88-91, 100-03.  Thus, the ALJ's opinion is supported by some medical evidence, and the ALJ properly weighed the medical opinions.

### C. Vocational Expert Hypothetical

Kent argues the ALJ provided a defective hypothetical to the VE because the record as a whole does not support the ALJ's RFC determination that Kent could perform light work.  Doc. 16.  As a preliminary matter, the ALJ did not err in determining Kent's RFC for the reasons outlined above.  An "ALJ may rely on testimony by a VE that is 'based on a correctly phrased hypothetical question that captures the concrete consequences of a claimant's deficiencies.'"  *Gieseke*, *v. Colvin*, 770 F.3d 1186, 1189 (8th Cir. 2014) (quoting *Cox v. Astrue*, 495 F.3d 614, 620 (8th Cir. 2007)).  The hypothetical question must "precisely" describe the claimant's limitations.  *See Newton v. Charter*, 92 F.3d 688, 694-95 (8th Cir. 1996).  When a hypothetical is based on an ALJ's RFC determination for a claimant, and that RFC determination is supported by the record, the ALJ can rely on testimony based on that hypothetical.  *Cox. v. Barnhart*, 471 F.3d 902, 907 (8th Cir. 2006); *Haggard v. Apfel*, 175 F.3d 591, 595 (8th Cir. 1999) (hypothetical that includes the limitations that the ALJ accepted as true is sufficient).  Put another way, "the ALJ may exclude any alleged impairments that [the ALJ] . . . properly rejected as untrue or unsubstantiated."  *Perkins v. Astrue*, 648 F.3d 892, 902 (8th Cir. 2011) (quoting *Hunt v. Massanari*, 250 F.3d 622, 625 (8th Cir. 2001)).

During the administrative hearing, the ALJ asked the VE about a hypothetical person who had the ability to perform light work, but could only occasionally stoop, kneel, crouch, and crawl, and could not be exposed to "sustained concentration temperatures" or hazards such as unprotected heights.  AR 52.  This matches the ALJ's ultimate determination of Kent's RFC.  AR 23 (only difference is RFC included no exposure "to sustained and concentrated cold temperatures" rather than "sustained concentration temperatures").  The VE responded that this hypothetical person could

perform Kent's past work as a telephone solicitor, or else other work as a sorter, mail clerk, and office helper. AR 52. The ALJ did not err by failing to include additional limitations, which were based on Kent's subjective complaints that the ALJ did not fully credit. *See Harvey*, 368 F.3d at 1016-17. Because the ALJ's hypothetical matched the limitations contained in the ALJ's RFC determination, which is substantially supported by evidence in the record, substantial evidence supports the ALJ's finding that Kent can perform his past relevant work as a telephone solicitor, as well as other jobs in the national economy.

### III. CONCLUSION

I recommend that the district court judge **affirm** the decision of the Commissioner and enter judgment in favor of the Commissioner.

Objections to this Report and Recommendation must be filed within fourteen days of service in accordance with 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure 72(b). Objections must specify the parts of the Report and Recommendation to which objections are made, as well as the parts of the record forming the basis for the objections. Fed. R. Civ. P. 72. Failure to object to the Report and Recommendation waives the right to *de novo* review by the district court of any portion of the Report and Recommendation, as well as the right to appeal from the findings of fact contained therein. *See United States v. Wise*, 588 F.3d 531, 537 n.5 (8th Cir. 2009).

**DONE AND ENTERED** this 2nd day of November, 2018.

Kelly K.E. Mahoney
Chief United States Magistrate Judge
Northern District of Iowa