# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# WESTERN DIVISION

| | |
|---|---|
| ROBERT H. KENT, <br><br> Plaintiff, <br> vs. <br><br> COMMISSIONER OF SOCIAL SECURITY, <br><br> Defendant. | No. C17-4063-LTS <br><br> **MEMORANDUM OPINION AND ORDER ON REPORT AND RECOMMENDATION** |

## I.   INTRODUCTION

This case is before me on a Report and Recommendation (R&R) filed by the Honorable Kelly K.E. Mahoney, Chief United States Magistrate Judge.  *See* Doc. No. 21.  Judge Mahoney recommends that I affirm the decision by the Commissioner of Social Security (the Commissioner) denying Robert H. Kent's application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1383f.  Neither party has objected to the R&R.  The deadline for such objections has expired.

## II.   APPLICABLE STANDARDS

### A.   *Judicial Review of the Commissioner's Decision*

The Commissioner's decision must be affirmed "if it is supported by substantial evidence on the record as a whole."  *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006); *see* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive  . . .").  "Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept

as adequate to support a conclusion." *Lewis v. Barnhart*, 353 F.3d 642, 645 (8th Cir. 2003). The Eighth Circuit explains the standard as "something less than the weight of the evidence and [that] allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal." *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994).

In determining whether the Commissioner's decision meets this standard, the court considers "all of the evidence that was before the ALJ, but it [does] not re-weigh the evidence." *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005). The court considers both evidence that supports the Commissioner's decision and evidence that detracts from it. *Kluesner v. Astrue*, 607 F.3d 533, 536 (8th Cir. 2010). The court must "search the record for evidence contradicting the [Commissioner's] decision and give that evidence appropriate weight when determining whether the overall evidence in support is substantial." *Baldwin v. Barnhart*, 349 F.3d 549, 555 (8th Cir. 2003) (citing *Cline v. Sullivan*, 939 F.2d 560, 564 (8th Cir. 1991)).

In evaluating the evidence in an appeal of a denial of benefits, the court must apply a balancing test to assess any contradictory evidence. *Sobania v. Sec'y of Health & Human Servs.*, 879 F.2d 441, 444 (8th Cir. 1989). The court, however, does not "reweigh the evidence presented to the ALJ," *Baldwin*, 349 F.3d at 555 (citing *Bates v. Chater*, 54 F.3d 529, 532 (8th Cir. 1995)), or "review the factual record de novo." *Roe v. Chater*, 92 F.3d 672, 675 (8th Cir. 1996) (citing *Naber v. Shalala*, 22 F.3d 186, 188 (8th Cir. 1994)). Instead, if, after reviewing the evidence, the court finds it "possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, [the court] must affirm the [Commissioner's] denial of benefits." *Kluesner*, 607 F.3d at 536 (quoting *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008)). This is true even in cases where the court "might have weighed the evidence differently." *Culbertson*, 30 F.3d at 939 (quoting *Browning v. Sullivan*, 958 F.2d 817, 822 (8th Cir. 1992)). The court may not reverse the Commissioner's decision "merely

because substantial evidence would have supported an opposite decision." *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984); *see Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005) ("[A]n administrative decision is not subject to reversal simply because some evidence may support the opposite conclusion.").

## B.     *Review of Report and Recommendation*

A district judge must review a magistrate judge's R&R under the following standards:

> Within fourteen days after being served with a copy, any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

28 U.S.C. § 636(b)(1); *see also* Fed. R. Civ. P. 72(b). Thus, when a party objects to any portion of an R&R, the district judge must undertake a de novo review of that portion.

Any portions of an R&R to which no objections have been made must be reviewed under at least a "clearly erroneous" standard. *See, e.g.*, *Grinder v. Gammon*, 73 F.3d 793, 795 (8th Cir. 1996) (noting that when no objections are filed "[the district court judge] would only have to review the findings of the magistrate judge for clear error"). As the Supreme Court has explained, "[a] finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Anderson v. City of Bessemer City*, 470 U.S. 564, 573-74 (1985) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)). However, a district judge may elect to review an R&R under a more-exacting standard even if no objections are filed:

> Any party that desires plenary consideration by the Article III judge of any issue need only ask. Moreover, while the statute does not require the judge

to review an issue *de novo* if no objections are filed, it does not preclude further review by the district judge, sua sponte or at the request of a party, under a *de novo* or any other standard.

*Thomas v. Arn*, 474 U.S. 140, 150 (1985).

### III.    THE R&R

Kent applied for disability insurance benefits in July 2014 and supplemental security income benefits in August 2014, alleging he became disabled on March 3, 2014, due to issues with his back, legs and neck. Doc. No. 21 at 1 (citing AR 57-58, 187-88, 194-97). After a hearing, an Administrative Law Judge (ALJ) applied the familiar five-step evaluation and found that Kent was not disabled as defined in the Act. Kent argues the ALJ erred in determining that he was not disabled because:

1. The ALJ did not give full weight to Kent's subjective complaints

2. The ALJ did not appropriately weigh the medical opinions of Dr. Johnson, other providers at Siouxland Community Health Center and the DDS physicians, resulting in a residual functional capacity (RFC) not supported by some medical evidence

3. The ALJ provided a defective hypothetical question to the vocational expert (VE).

*See* Doc. No. 21 at 3-4 (citing Doc. No. 16). Judge Mahoney addressed each argument separately.

With regard to Kent's subjective complaints, Judge Mahoney noted that Kent did not submit a function report but did complete a pain questionnaire, answered interrogatories and testified at the administrative hearing. *Id.* (citing AR 38-51, 234-36, 286-93). She noted Kent reported constant back pain, a sharp neck pain that comes and goes and worsens if he sits or stands for too long. *Id.* (citing AR 287). Kent testified that he has to lie down most of the day due to pain in his back and neck and can only sit,

stand or walk for short periods (five to twenty minutes at a time). *Id*. He also experienced numbing in his arms. *Id*.

Judge Mahoney noted the ALJ discounted Kent's subjective complaints based on inconsistencies with the medical evidence, the nature of Kent's treatment, some of Kent's activities of daily living, and inconsistencies in Kent's own statements. *Id*. at 5. She concluded these were good reasons to find Kent's allegations not fully credible. *Id*. First, she reviewed the ALJ's discussion of Kent's treatment records, which confirmed degenerative changes in Kent's spine. Those records showed his neck pain resolved prior to surgery in June 2014 and surgery further improved his condition. *Id*. (citing AR 24). Kent stated his daily sharp neck pain made it hard for him to sit or stand very long because his neck would "lock up." *Id*. at 6 (citing AR 44, 47, 287). In January 2014, he reported his neck pain had subsided and reported no neck pain in March, April or May that year. *Id*. (citing AR 364-65, 367). The only other complaint of neck pain through October 2016 was in December 2015 and was determined to be related to the cold weather. *Id*. (citing AR 416-17).

Judge Mahoney then noted the ALJ's consideration of Kent's back pain. Kent testified his back surgery was unsuccessful and he experienced constant, sharp, and aching pain every day in his low back, left arm and right leg. *Id*. (citing AR 44, 47, 234, 287). While Kent reported ongoing pain after surgery, Judge Mahoney stated the records supported the ALJ's finding that Kent's condition improved after surgery. *Id*. She noted evidence in the record where Kent reported that his neck and back pain bothered him more in the cold months, did not occur on a daily basis, decreased in intensity after surgery and improved somewhat after surgery. *Id*. Judge Mahoney also noted that MRI results, as discussed by Kent's doctor, showed significant improvement in Kent's condition. *Id*. (citing AR 309, 385-86, 393-94). Dr. Johnson opined that Kent's reported "pain is out of proportion to what I would expect given his operative course and MRI findings." *Id*. at 7 (citing AR 404).

5

Judge Mahoney also discussed the ALJ's consideration of Kent's physical examinations. Many of these examinations noted that Kent had normal gait and full muscle strength. *Id.* After surgery, objective testing showed improved range of motion, negative straight-leg testing and decreased pain during palpation. *Id.* While some of the objective findings were inconclusive, Judge Mahoney concluded that the results generally supported the ALJ's finding. *Id.* at 8.

Regarding Kent's allegation that he needs to lie down most of the day, the ALJ noted Kent did not report this limitation to treatment providers following his surgery. *Id.* (citing AR 24). The only references were in August 2014, when Kent reported having a stiff back in the morning that improved as the day went on and in October 2014, when he indicated his pain did not improve or worsen with any particular position. *Id.* (citing AR 375, 403). Judge Mahony noted that treatment providers never imposed these types of restrictions and objective tests generally did not support these claimed limitations. *Id.*

The ALJ also found that Kent's reported need to use a cane was inconsistent with the medical evidence. *Id.* (citing AR 24). Judge Mahoney noted that a nurse practitioner wrote a short letter in January 2017 stating that Kent "chronically walks with a limp and requires a cane for ambulation." *Id.* (citing AR 186). Other than that, only two treatment records reflected Kent using a cane. *Id.* Therefore, Judge Mahoney concluded this reason supported the ALJ's credibility determination.

Next, Judge Mahoney noted the ALJ relied on inconsistencies between Kent's statements regarding his pain and functional limitations. *Id.* at 9. Kent reported falls to his treatment providers in September and October 2016. *Id.* (citing AR 446, 453). Kent testified that the first fall involved falling over a garbage can and blacking out, possibly the result of a seizure. *Id.* (citing 44). When he reported this incident to a nurse practitioner a few months after it happened, he denied any seizures and stated he passed out while cooking and cleaning in a hot kitchen and after he had not been eating very well. *Id.* (citing AR 453). He stated he was able to get up and finish cleaning after he came to and denied any seizures. *Id.*

6

The second fall involved falling down two steps while carrying groceries. *Id.* (citing AR 446). He was prescribed a new cane during that visit, but did not report any other falls and did not complain of any neck or back pain (other than from the fall itself). *Id.* (citing AR 446-49). Judge Mahony noted that, in addition to these, there were other inconsistencies among Kent's statements in the record. Kent claimed at the hearing that his medication caused him to hallucinate. *Id.* (citing AR 45). He did not report this issue in the benefits application process, nor to his treatment providers. *Id.* Kent reported in December 2014 that he was agitated all the time because of his pain, yet treatment records showed that he was never agitated or anxious during examinations. *Id.* at 9-10 (citing AR 260, 416-17, 421, 428, 431, 448). Kent also reported in December 2014 that he needed help taking care of personal hygiene and in November 2016, he testified that he was unable to feed himself, dropped dishes and could only lift items such as bread. *Id.* at 10 (citing AR 26, 50, 260). In September 2015, however, he indicated he was able to attend to his personal needs. *Id.* (AR 291). The ALJ stated that Kent's abilities to carry groceries and cook and clean his kitchen suggested he may not be as limited as alleged. *Id.* (citing AR 24). Judge Mahoney concluded the record supported a finding that Kent's ability to engage in daily activities called into question his complaints of disabling pain and limitations. *Id.*

Judge Mahoney then discussed the ALJ's finding that Kent's statement that he could no longer work as a telephone solicitor (work he performed from 2007-2010 and 2011-2012) was inconsistent with his return to work as a power washer, which occurred in 2013 and 2014. *Id.* (citing AR 24-25, 43-44, 78, 214, 304). Kent had stated he could not work as a telephone solicitor because he had to lie down or stand up and move around because his back locked up. *Id.* (citing AR 42-43, 50). He also complained his arm would go numb. *Id.* Judge Mahoney considered Kent's argument that the ALJ misstated the record by finding that Kent returned to more strenuous work as a power washer because he did so for only a short period of time before his surgery. *Id.* Judge Mahoney noted that the ALJ considered this factor in evaluating Kent's credibility, not as a

7

determinative factor in assessing Kent's RFC. She concluded Kent's testimony about being unable to work as a telephone solicitor was inconsistent with the fact that he later performed part-time work as a power washer and, in any event, the ALJ provided other good reasons for finding Kent's allegations were not fully credible. *Id.* at 11.

Another reason the ALJ found Kent not fully credible was the conservative nature of Kent's treatment since his June 2014 surgery. *Id.* (citing AR 24). After his surgery, treatment providers recommended physical therapy and medication management to treat his reported pain. *Id.* Kent even testified at the hearing that he was being treated with pain medication and that his providers wanted to reduce that medication. *Id.* (citing AR 45). Moreover, Kent sought less treatment for his pain after surgery. Treatment records showed he had nine medical visits between January and June 2014, then monthly visits following surgery along with physical therapy and pain clinic visits and then only two visits per year in 2015 and 2016, with only one of those visits being a follow-up for his pain. *Id.* Judge Mahoney concluded this was an appropriate reason to discredit Kent's subjective allegations. *Id.* at 11-12.

The ALJ also noted that Kent stopped treatment with the pain clinic without explanation and declined referral to an orthopedic surgeon because he did not want any more surgeries. *Id.* at 12. Judge Mahoney stated that pursuant to Social Security Ruling 16-3P, the ALJ must consider possible reasons a claimant failed to seek or follow through with treatment before discrediting a claimant on that basis. *Id.* at 13. She noted the ALJ failed to inquire why Kent stopped treatment at the pain clinic or declined other treatment options, and whether his failure to further his treatment was excused. Ultimately, she concluded that any error in this regard was harmless because other reasons supported the ALJ's credibility determination and the ALJ would not have assessed Kent's subjective complaints differently if the ALJ considered Kent's discontinuation of treatment at the pain clinic. *Id.* For all of these reasons, Judge Mahoney found the ALJ gave good reasons for not giving full weight to Kent's subjective complaints. *Id.*

Judge Mahoney next addressed Kent's arguments regarding the ALJ's treatment of the medical opinions and medical evidence. After summarizing the relevant law, Judge Mahoney noted that the ALJ gave some weight to Dr. Johnson's opinion that Kent could lift only ten to fifteen pounds and could not engage in repetitive twisting or bending because Dr. Johnson imposed those restrictions immediately following Kent's surgery. *Id.* at 15 (citing AR 25). Kent argued Dr. Johnson's opinion was substantiated by MRI results. He also argued that the ALJ failed to indicate what weight he gave to subsequent treatment providers at Siouxland Community Health. *Id.* Kent pointed out his treatment records from those providers showed a continued diagnosis of degenerative disc disease supported by MRI testing and that he had chronic back pain following surgery. *Id.*

Judge Mahoney stated that Dr. Johnson imposed the above-mentioned limitations the day after Kent's surgery when Kent requested an early discharge, was walking without assistance and met all the criteria for discharge. *Id.* The only other limitations noted in the treatment records were dated July 9, 2014, from a physician assistant directing Kent to lift no more than fifteen pounds and avoid repetitive bending, twisting or lifting. *Id.* (citing AR 372). Judge Mahoney noted these limitations were inconsistent with more recent treatment records. *Id.* (citing AR 375, 377-78, 404, 421-22, 425, 431-32, 448-49, 455-56). Indeed, Dr. Johnson later opined that the updated MRI showing improvement suggested that Kent's reported pain was inconsistent with the medical evidence. *Id.* Moreover, in 2015 and 2016, Kent's treatment providers encouraged him to engage in physical activity. The ALJ found that Dr. Johnson's post-surgery limitations were inconsistent with the overall medical evidence. *Id.* at 16. Judge Mahoney concluded this finding was supported by the record. *Id.* She noted that although the ALJ gave only some weight to Dr. Johnson's post-operative limitations, the RFC was largely consistent with subsequent treatment records from Dr. Johnson and other treatment providers as it restricted Kent to occasionally lifting twenty pounds. *Id.* at 17.

The non-examining DDS physicians opined that Kent could engage in light work. *Id.* (citing AR 25). The ALJ gave some weight to their opinions. Judge Mahoney

9

concluded these opinions support the ALJ's RFC determination that Kent could perform light work with only occasional stooping, kneeling, crouching and crawling with no exposure to sustained and concentrated cold temperatures or working around unprotected heights. *Id.* (citing AR 23). Kent argued these opinions should have been given little weight because they are not supported by substantial evidence. Judge Mahoney summarized Eighth Circuit law for the proposition that while non-examining, consultative physician opinions cannot support an RFC determination on their own, they may when combined with other medical evidence in the record that clearly establishes a claimant's ability to function in the workplace. *Id.* at 17-18. Judge Mahoney concluded the ALJ based Kent's RFC on all the medical opinions (properly weighed) in addition to the treatment records as a whole and Kent's subjective complaints. *Id.* at 18-19.

Finally, Judge Mahoney addressed Kent's argument that the ALJ provided a defective hypothetical to the VE. *Id.* at 19. She noted the ALJ asked the VE about a hypothetical person who had the ability to perform light work, but could only occasionally stoop, kneel, crouch and crawl and could not be exposed to "sustained concentration temperatures" or hazards such as unprotected heights. *Id.* (citing AR 52). Judge Mahoney noted that this matched the ALJ's ultimate RFC determination. *Id.* (citing AR 23). The VE responded to the hypothetical by stating the individual could perform Kent's past work as a telephone solicitor, or other work such as a sorter, mail clerk and office helper. *Id.* (citing AR 52). Judge Mahoney concluded the ALJ did not err by failing to include additional limitations based on Kent's subjective complaints, which the ALJ did not fully credit. She stated: "Because the ALJ's hypothetical matched the limitations contained in the ALJ's RFC determination, which is substantially supported by evidence in the record, substantial evidence supports the ALJ's finding that Kent can perform his past relevant work as a telephone solicitor, as well as other jobs in the national economy." *Id.* at 20.

## IV. DISCUSSION

Because the parties did not object to the R&R, I have reviewed it for clear error. Judge Mahoney applied the appropriate legal standards in evaluating the ALJ's credibility determination, the medical and opinion evidence and the hypothetical question to the VE in concluding that ALJ's decision was supported by substantial evidence in the record as a whole. Based on my review of the record, I find no error – clear or otherwise – in Judge Mahoney's recommendation. As such, I adopt the R&R in its entirety.

## V. CONCLUSION

For the reasons set forth herein:

1. I **accept** Judge Mahoney's R&R (Doc. No. 21) without modification. *See* 28 U.S.C. § 636(b)(1).
2. Pursuant to Judge Mahoney's recommendation, the Commissioner's determination that Kent was not disabled is **affirmed**.
3. Judgment shall enter in favor of the Commissioner.

**IT IS SO ORDERED.**

**DATED** this 15th day of March, 2019.

_____
Leonard T. Strand, Chief Judge